UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| MARY CARMEN VALENCIA, | No. CV 10-6529-PLA |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on September 3, 2010, seeking review of the Commissioner's denial of her application for Supplemental Security Income payments. The parties filed Consents to proceed before the undersigned Magistrate Judge on October 27, 2010, and November 23, 2010. Pursuant to the Court's Order, the parties filed a Joint Stipulation on June 6, 2011, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## BACKGROUND

Plaintiff was born on April 14, 1960. [Administrative Record ("AR") at 26, 56, 138.] She has an eleventh grade education, some vocational training, and has past relevant work experience as, among other things, a home care provider, noon aide, recovery associate, waitress, and sales associate. [AR at 22, 26, 33-35, 112-13, 116, 118-23, 199.]

On March 31, 2007, plaintiff protectively filed her application for Supplemental Security Income payments, alleging that she has been disabled since March 23, 2007, due to hepatitis C, an enlarged liver, depression, fibromyalgia, and other impairments. [AR at 56, 90-98, 111-12, 125, 131, 141.] After her application was denied initially and upon reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 60-63, 65-72.] A hearing was held on September 9, 2009, at which time plaintiff appeared with her representative[1] and testified on her own behalf. [AR at 23-55.] A vocational expert also testified. [AR at 52-55.] On November 2, 2009, the ALJ determined that plaintiff was not disabled. [AR at 13-22.] The Appeals Council denied plaintiff's request for review on July 6, 2010. [AR at 1-3, 10.] This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at

---

[1] It is unclear from the record whether or not plaintiff's representative is an attorney. On the Request for Review of Hearing Decision form, the non-attorney box next to his signature is checked; however, in other places in the record, he is referred to as plaintiff's attorney. [AR at 10, 23.]

1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.
## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

### A. THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment

in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that she is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because she can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.   THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ concluded that plaintiff has not engaged in any substantial gainful activity since March 31, 2007, the date of plaintiff's application for Supplemental Security Income payments. [AR at 18.] At step two, the ALJ concluded that plaintiff has the following severe impairments:[2] hepatitis C, fibromyalgia, plantar fasciitis, chronic fatigue, and obesity. [Id.] At step three, the ALJ determined that plaintiff's impairments do not meet or equal any of the impairments in the Listing. [Id.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[3] to perform a full range of light work[4] with certain limitations: "[plaintiff] should avoid unprotected heights, hazardous machinery and extreme temperatures." [AR at 19.] At step

---

[2]   The ALJ noted that while not all of the medically determinable impairments are severe if considered separately, "in combination, [they] cause more than minimal limitation in the claimant's ability to perform basic work activities and therefore are severe." [AR at 18.]

[3]   RFC is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

[4]   Light work is defined as work that involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities." 20 C.F.R. §§ 404.1567(b), 416.967(b).

four, the ALJ concluded that plaintiff is capable of performing her past relevant work as a sales clerk and waitress.[5]  [AR at 22.]  Accordingly, the ALJ found plaintiff not disabled.  [Id.]

**V.**

**THE ALJ'S DECISION**

Plaintiff contends that the ALJ (1) failed to set forth legally sufficient reasons for rejecting the opinion of treating physician Dr. Lloyd Costello; and (2) improperly evaluated plaintiff's subjective complaints.  [Joint Stipulation ("JS") at 2-3, 11.]  As set forth below, the Court agrees with plaintiff, in part, and remands the matter for further proceedings.

**A.    TREATING PHYSICIAN'S OPINION**

Plaintiff argues that the ALJ erred in evaluating the opinion of treating physician Dr. Lloyd Costello.  [JS at 2-5.]  The Court agrees.

In evaluating medical opinions, the case law and regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians).  See 20 C.F.R. §§ 404.1502, 404.1527, 416.902, 416.927; see also Lester, 81 F.3d at 830.  Generally, the opinions of treating physicians are given greater weight than those of other physicians, because treating physicians are employed to cure and therefore have a greater opportunity to know and observe the claimant.  Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007); Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).  Despite the presumption of special weight afforded to treating physicians' opinions, an ALJ is not bound to accept the opinion of a treating physician.  Where a treating physician's opinion does not contradict other medical evidence, an ALJ must provide clear and convincing reasons to discount it.  An ALJ may afford less weight to a treating physician's opinion that conflicts with other medical

---

[5]  The ALJ indicated that plaintiff's past relevant work as a sales clerk and waitress "does not require the performance of work-related activities" precluded by her residual functional capacity.  [AR at 22.]

5

evidence only if the ALJ provides specific and legitimate reasons for discounting the opinion. See Lester, 81 F.3d at 830-31; see also Orn, 495 F.3d at 632-33 ("Even when contradicted by an opinion of an examining physician that constitutes substantial evidence, the treating physician's opinion is 'still entitled to deference.'") (citation omitted); Social Security Ruling[6] 96-2p (a finding that a treating physician's opinion is not entitled to controlling weight does not mean that the opinion is rejected). Similar rules apply to an ALJ's evaluation of an examining physician's opinion. Lester, 81 F.3d at 830-31.

The record shows that plaintiff received medical treatment from Dr. Costello beginning in January 2008 until at least June 2009. [See AR at 269-96, 322-29, 335-38.] Plaintiff's initial complaints and illnesses included, among other things, chronic aches, hepatitis C, fibromyalgia, and insomnia. [AR at 269-71.] On March 19, 2009, Dr. Costello completed a Physical Residual Functional Capacity Questionnaire, in which he listed plaintiff's diagnoses as fibromyalgia, hepatitis C, insomnia, and menopause. [AR at 311-15.] He listed plaintiff's symptoms as pain, fatigue, dizziness, anxiety, irritability, and difficulty concentrating. [AR at 311.] Regarding plaintiff's pain, Dr. Costello noted that she has pain in her back, neck, and shoulders ranging in severity from three to ten (on a scale of one to ten), and that plaintiff is "never without pain." [AR at 311, 348.] He also noted that plaintiff's medications[7] cause certain side effects such as sedation, difficulty focusing, dry mouth, dizziness, and fatigue. [Id.] Dr. Costello further indicated that during a typical workday plaintiff constantly experiences pain or other symptoms severe enough to interfere with the attention and concentration needed to perform simple work tasks. [AR at 312.] Specifically, in regard to plaintiff's functional limitations, he stated that plaintiff cannot sit for longer than ten to fifteen minutes at one time before needing to get up, she cannot stand for longer than five to ten minutes at one time before needing to sit down or walk around, and she can

---

[6] Social Security Rulings ("SSR") do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

[7] Plaintiff's medications include, among other things, Lyrica, Zolpidem, Oxycodone, and Percodan. [AR at 43, 197.]

only sit and stand/walk for less than two hours total in an eight hour working day. [AR at 312-13.] Moreover, Dr. Costello noted that plaintiff is incapable of even "low stress" jobs because plaintiff's pain limits her ability to deal with external pressures. [AR at 312.] He further stated that plaintiff's impairments have lasted or can be expected to last at least twelve months and that she is likely to be absent from work more than four days per month as a result of her impairments or treatment. [AR at 311, 314.] In a letter dated January 12, 2010, Dr. Costello opined that although plaintiff is clinically stable, her ability to function is significantly limited and she experiences significant pain ranging anywhere from four to seven on a one-to-ten scale (where one is minimal pain and ten is excruciating pain).[8] [AR at 348.] In the letter, he also clarified his earlier residual functional capacity evaluation in which he had stated that plaintiff could sit, stand, and/or walk less than two hours in an 8 hour work day: "I believe this to be true because although [plaintiff] can perform light chores at home, she is able to lie down when she becomes tired or the pain becomes severe. In a typical workplace situation she would not be afforded this luxury." [Id.]

In the decision, the ALJ provided several reasons for rejecting Dr. Costello's opinion of plaintiff's limitations expressed in the March 19, 2009, Physical Residual Functional Capacity Questionnaire: it was not consistent with other medical opinions; it was not supported by the record; and it was more extreme than plaintiff's own allegations regarding her limitations and functional ability. [AR at 21-22.] For the reasons explained below, the Court concludes that the ALJ provided insufficient reasons for rejecting Dr. Costello's opinion.

First, an ALJ may not properly reject a treating physician's opinion by merely referencing the contrary findings of another physician. Even when contradicted, a treating physician's opinion is still entitled to deference, and the ALJ must provide specific and legitimate reasons supported by substantial evidence for rejecting it. See Orn, 495 F.3d at 632-33; SSR 96-2p; see also Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009) ("to reject the opinion of a treating physician 'in favor of a conflicting opinion of an examining physician[,]' an ALJ still

---

[8] Dr. Costello's letter was written on January 12, 2010, and was not part of the record when the ALJ rendered his decision on November 2, 2009. [AR at 13, 348.]

must 'make[] findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record'") (quoting Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002)). Here, the ALJ failed to provide specific and legitimate reasons for rejecting Dr. Costello's opinion in favor of allegedly conflicting medical opinions. Specifically, the ALJ found Dr. Costello's assessment that plaintiff "could sit, stand and/or walk less than two hours in an eight-hour work day...[and] could use her hands and fingers only ten percent of the time and use her arms only five percent of the time," far too restrictive and not consistent with other medical opinions. [AR at 21.] However, it is not clear from the ALJ's decision which specific "other medical opinions" he determined to contradict Dr. Costello's opinion. [Id.] Indeed, the ALJ also failed to give substantial weight to the opinions of either examining physician Dr. Ehreema Nadir or non-examining State agency physicians Dr. B. Harris and Dr. David J. Seff. [AR at 21, 220-23, 257, 267-68.] Specifically, the ALJ gave "some weight" to Dr. Nadir's assessment that plaintiff's hepatitis C was not so severe as to restrict her from working, but gave "little weight" to Dr. Nadir's assessment that "plaintiff could perform a full range of medium work" because the ALJ determined plaintiff was more restricted than Dr. Nadir's assessment indicated. [AR at 21.] Similarly, the ALJ gave only "some weight" to the opinions of the non-examining State agency physicians because they did not contemplate all of plaintiff's allegations and "therefore did not provide a complete assessment of the claimant's limitations as a whole." [Id.] By giving limited weight to the opinions of the other physicians, the ALJ did not provide any reference to justify his rejection of the treating physician's opinion. Thus, the first reason provided by the ALJ to reject Dr. Costello's opinion fails. See Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001) ("The ALJ may not reject the opinion of a treating physician, even if it is contradicted by the opinions of other doctors, without providing 'specific and legitimate reasons' supported by substantial evidence in the record."); see also Hostrawser v. Astrue, 364 Fed.Appx. 373, 376-77 (9th Cir. 2010) (citable for its persuasive value pursuant to Ninth Circuit Rule 36-3) (ALJ erred in affording nontreating physicians' opinions controlling weight over the treating physicians' opinions, where the ALJ did not provide a thorough summary of the conflicting clinical evidence and his interpretations thereof with an explanation as to why his interpretations of the evidence, rather than those of the treating physicians, were

correct). Furthermore, as explained below, the other two reasons stated by the ALJ for rejecting Dr. Costello's opinion are also not specific and legitimate reasons for rejecting the opinion of a treating physician.

The ALJ's general assertion that Dr. Costello's findings are not supported by the overall record is inadequate to reject Dr. Costello's treating opinion, as this reason fails to reach the level of specificity required for rejecting a medical opinion. See Embrey v. Bowen, 849 F.2d 418, 421-23 (9th Cir. 1988) ("To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required ... The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.") (footnote omitted). Here, the ALJ's contention that Dr. Costello's medical opinion was unsupported is not a wholly accurate description of the treatment record. First, Dr. Costello diagnosed plaintiff and treated her for fibromyalgia, and opined that this condition resulted in disabling limitations. [AR at 273, 311-12.] Fibromyalgia is a syndrome that "is poorly understood within much of the medical community." Benecke v. Barnhart, 379 F.3d 587, 594 n.4 (9th Cir. 2004) (citation omitted). Significantly, there is no known cause or cure, and fibromyalgia "is diagnosed entirely on the basis of patients' reports of pain and other symptoms." Id. at 590; Sarchet v. Chater, 78 F.3d 305, 306 (7th Cir. 1996) ("[Fibromyalgia's] cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective."). Courts have noted that there are no laboratory or diagnostic tests that can confirm the presence of fibromyalgia. Benecke, 379 F.3d at 590 (citations omitted); Sarchet, 78 F.3d at 306; Brosnahan v. Barnhart, 336 F.3d 671, 672 n.1 (8th Cir. 2003). Hence, fibromyalgia is often diagnosed by eliminating other possible conditions and confirming the presence of the disease's symptoms: widespread pain existing for at least three months, fatigue, disturbed sleep, stiffness, and tenderness in at least eleven of eighteen specified sites ("trigger points") on the body. Brosnahan, 336 F.3d at 672 n.1 ("[d]iagnosis [of fibromyalgia] is usually made after eliminating other conditions"); Preston v. Sec. of Health and Human Servs., 854 F.2d 815, 818 (6th Cir. 1988)

("no objective tests . . . can conclusively confirm [fibromyalgia]"); Rollins v. Massanari, 261 F.3d 853, 855 (9th Cir. 2001) (listing fibromyalgia's symptoms (quoting Sarchet, 78 F.3d at 306)).

With regard to plaintiff's fibromyalgia, the ALJ cited to treatment records where plaintiff reported significant improvement in her symptoms, and concluded that the medical record demonstrated plaintiff's symptoms were consistently and currently well controlled with the use of medication. [AR at 20.] However, contrary to the ALJ's assessment, Dr. Costello's treatment records from January 2008 through February 2009 demonstrate that plaintiff suffered from chronic aching, had persistent pain despite her medications, and experienced pain all over her body. [AR at 269, 272, 274, 276, 287, 291, 293.] Plaintiff saw no significant help from her pain medication. [AR at 287, 291, 293.] Thus, although plaintiff's fibromyalgia stabilized occasionally when she took medication, her symptoms were by no means "consistently and currently well controlled" as indicated by the ALJ. [AR at 20, 278, 280, 335.] Indeed, Dr. Costello's treatment records mirror some of the criteria for fibromyalgia listed above and reflect plaintiff's repeated complaints of aches and pains existing for at least three months [AR at 269, 272, 274, 276, 280, 287, 291, 293], fatigue [AR at 269, 282, 289], and disturbed sleep [AR at 272.] Furthermore, treatment records of plaintiff's former treating physician from Arizona, Dr. Jason Brown, indicate, among other things, that plaintiff complained of fatigue/malaise and musculoskeletal weakness. [AR at 213-14, 233.] Although Dr. Brown was not plaintiff's treating physician at the time of her application for Supplemental Security Income payments, the ALJ could have taken his medical treatment notes into account as a basis for comparison when determining the validity of Dr. Costello's opinion. Dr. Costello's opinion expressed in the Physical Residual Functional Capacity Questionnaire that plaintiff suffers from pain and fatigue is consistent with Dr. Brown's medical treatment notes. [AR at 311-15.] Moreover, in a letter dated July 27, 2009, plaintiff's treating podiatrist, Dr. Jeff Bruening, also noted that plaintiff suffers from fibromyalgia and is a candidate for Supplemental Security Income payments. [AR at 342.] Thus, the ALJ's conclusion that Dr. Costello's "opinion is isolated and in contradiction to all other reporting sources" and is "not supported by the record" appears to be a selective consideration of the evidence [AR at 21]; an ALJ cannot ignore or misstate competent evidence in order to justify his conclusion (Gallant v. Heckler, 753 F.2d 1450,

1456 (9th Cir. 1984)), but rather must consider all of the relevant evidence in context without misconstruing portions of the record to bolster his findings. See Reddick v. Chater, 157 F.3d 715, 722-23 (9th Cir. 1998) (it is impermissible for the ALJ to develop an evidentiary basis by "not fully accounting for the context of materials or all parts of the testimony and reports"); see also Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975) (an ALJ is not permitted to reach a conclusion "simply by isolating a specific quantum of supporting evidence").

Second, Dr. Costello also treated plaintiff for hepatitis C and his treatment records indicate that plaintiff's condition is chronic. [AR at 274.] The ALJ noted that laboratory tests were positive for hepatitis C, he cited to an "unremarkable" abdominal ultrasound, and referred to treatment notes that do not document any established fatigue or weakness. [AR at 20.] The ALJ did not, however, consider Dr. Costello's treatment records from July and September 2008 indicating that plaintiff complained of aching, had elevated liver function tests, and complained of increased stress and fatigue [AR at 280-82], or plaintiff's associated complaints of increased nausea and dizziness in March 2009. [AR at 328.] Moreover, Dr. Brown's treatment records also demonstrate plaintiff's similar subjective complaints of chills and fatigue/malaise over the years. [AR at 213-14.] Also, when testifying at the hearing before the ALJ, plaintiff complained of being "fatigued all the time," having "flulike symptoms," not being able to stand for long periods, and having to sleep. [AR at 37.] In sum, the ALJ's rejection of Dr. Costello's opinion in the Physical Residual Functional Capacity Questionnaire as lacking adequate support in the record was erroneous because several sources, including Dr. Costello's own treatment notes, corroborate his conclusion about plaintiff's limitations. [AR at 312.]

Finally, the ALJ's rejection of Dr. Costello's opinion as being more extreme than plaintiff's own allegations regarding her limitations and functional ability was unwarranted. [AR at 21.] While this may be a proper ground on which to reject a treating doctor's opinion (see 20 C.F.R. §§ 404.1527(d)(4), 416.927(d)(4) (the more consistent an opinion is with the record as a whole, the more weight it will be given); see also, e.g., Arnold v. Astrue, 2011 WL 2261058, at *7 (C.D. Cal. June 8, 2011) (an ALJ is entitled to reject a treating doctor's opinion that is not supported by a "plaintiff's statements or [by] the record as a whole")), that is not the case here. Dr. Costello

opined that plaintiff is incapable of even "low stress" jobs because her pain limits her ability to deal with external pressures; and she can never stoop (bend), crouch/squat, or climb ladders. He further indicated that plaintiff cannot lift and carry over twenty to fifty pounds in a competitive work situation, although she can occasionally lift and carry less than ten pounds. [AR at 312-14.] Plaintiff testified that she can lift groceries, can lift but not pour a gallon of milk if it is full, and cannot lift one hundred pounds. [AR at 41.] Dr. Costello further stated that plaintiff cannot sit for longer than ten to fifteen minutes at one time before needing to get up. [AR at 312-14.] Plaintiff testified that she cannot sit for two hours at one time without constantly moving or getting up. [AR at 40.] Dr. Costello stated that plaintiff cannot stand for longer than five to ten minutes at one time before needing to sit down or walk around. [AR at 312-14.] Plaintiff testified that she can never stand for an hour and can only stand for five minutes or less at one time because it is too painful. [AR at 41.] Dr. Costello stated that plaintiff can only sit and stand/walk for less than two hours total in an eight hour working day. [AR at 312-14.] Plaintiff testified that she can only walk around the block and then needs to rest because she gets winded, she cannot walk for thirty minutes, and she walks in pain. [AR at 39.] Finally, Dr. Costello stated that plaintiff suffers from fatigue, dizziness, anxiety, difficulty concentrating, and pain in her back, legs, neck and shoulders. [AR at 311.] Plaintiff testified that she gets dizzy [AR at 35, 43], has a lot of pain in her legs, hands and throughout her body [AR at 35, 43, 45], cannot focus or concentrate for extended periods of time [AR at 44-45], and is fatigued all the time [AR at 37.] Thus, plaintiff's testimony regarding her own functional limitations is largely consistent with Dr. Costello's assessment of her limitations. Accordingly, the ALJ's assessment that Dr. Costello's opinion regarding plaintiff's functional limitations is more extreme than what plaintiff herself claims[9] is not a specific and legitimate reason

---

[9] The Court notes that although the ALJ summarized some of plaintiff's other more general claimed symptoms and limitations in his report (hepatitis C makes it hard for her to function because she always gets sick when she works; she suffers from fibromyalgia; her energy level is low and she is tired all the time; she needs a lot of sleep, otherwise she cannot function throughout the day; she is forgetful and her memory is clouded; and she is sometimes disoriented and dizzy), he did not explain how these limitations do not comport with Dr. Costello's medical opinion. [AR at 19.]

to reject the opinion of the treating physician. Remand is warranted for the ALJ to properly evaluate Dr. Costello's opinion.

**B.  PLAINTIFF'S CREDIBILITY**

Plaintiff next contends that the ALJ erred in his credibility determination and failed to set forth legally sufficient reasons for rejecting her subjective complaints. [JS at 2, 11.] As the ALJ's credibility determination was based, in part, on his analysis of the medical evidence, which the Court finds was improper for the reasons discussed above, the ALJ is instructed to reassess plaintiff's credibility after he has reconsidered the medical evidence.

## VI.

## REMAND FOR FURTHER PROCEEDINGS

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision. See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir. 2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is appropriate for the ALJ to reevaluate Dr. Costello's opinion and reassess plaintiff's credibility. The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: July 19, 2011

    /s/ Paul L. Abrams
    PAUL L. ABRAMS
    UNITED STATES MAGISTRATE JUDGE